UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PARKER JENSEN,<br>Plaintiff,<br><br>v.<br><br>BALTIMORE COUNTY PUBLIC SCHOOLS,<br>BALTIMORE COUNTY BOARD OF EDUCATION,<br>DR. KIMBERLY CULBERTSON,<br>in her official and individual capacities,<br>RICHARD MUTH,<br>in his official and individual capacities,<br>ERIC KNOX,<br>in his official and individual capacities,<br>Defendants. | Case No. 1:25-cv-1106 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Parker Jensen, by and through counsel, alleges as follows:

1. Plaintiff Parker Jensen, an 18-year-old senior at Towson High School and a recent enlistee in the United States Marine Corps, brings this action to vindicate his constitutional rights under the First and Fourteenth Amendments.

2. Plaintiff holds pro-America, pro-military, and anti-illegal immigration viewpoints—positions that place him in an extreme minority at Towson High School, where the overwhelming majority of students and faculty openly advocate left-wing perspectives and express disdain for views like his.

3. Defendants retaliated against Plaintiff for exercising his First Amendment rights to document and challenge the school's failure to comply with Maryland law mandating patriotic observances, as well as its promotion of resources for illegal immigrants, which Plaintiff believes undermines the school's educational mission and student safety.

4.	This retaliation—including suspension, trespass from public property, and false characterizations of his conduct—stems not only from his protected activities but also from his outspoken dissent against the prevailing ideological orthodoxy of Defendants Baltimore County Public Schools (BCPS) and Baltimore County Board of Education (Board), revealing a pattern of viewpoint discrimination against a student whose pro-military and pro-America stance starkly contrasts with the school's dominant culture.

## JURISDICTION AND VENUE

5.	This action arises under the Constitution of the United States, specifically the First and Fourteenth Amendments, and is brought pursuant to 42 U.S.C. § 1983.

6.	This Court has jurisdiction over this matter under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction).

7.	Venue is proper in this Court under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred within the District of Maryland, specifically in Baltimore County.

## PARTIES

8.	Plaintiff Parker Jensen is an adult citizen of the state of Maryland and a senior at Towson High School.

9.	Defendant Baltimore County Public Schools (BCPS) is a public school system operating under the laws of Maryland, responsible for the education of students in Baltimore County, including at Towson High School.

10.	Defendant Baltimore County Board of Education (Board) is the governing body of BCPS, located at 6901 North Charles Street, Towson, Maryland 21204, tasked with overseeing school policies and ensuring compliance with Maryland law.

11. Defendant Dr. Kimberly Culbertson is the Principal of Towson High School, sued in her official and individual capacities for actions taken under color of state law.

12. Defendant Richard Muth is the School Safety Manager for BCPS, sued in his official and individual capacities for actions taken under color of state law.

13. Defendant Eric Knox is the Executive Director of the Department of School Safety for BCPS, sued in his official and individual capacities for actions taken under color of state law

## FACTUAL ALLEGATIONS

14. Plaintiff Parker Jensen is an 18-year-old high school senior who enlisted in the United States Marine Corps on March 26, 2025, and has no prior history of suspension from kindergarten through 12th grade.

15. On or about February 28, 2025, Plaintiff noticed that certain classrooms at Towson High School, including those of teachers Mr. Sun and Ms. Needer, lacked American flags, in violation of Maryland Education Article § 7-105(c), which mandates that each public school classroom provide an American flag and patriotic exercises, including the Pledge of Allegiance.

16. Specifically, Maryland Education Article § 7-105 Patriotic Observances, states in pertinent part:

> **Duty of county board to provide American flags and prepare programs for schools**
> (c) Each county board shall:
>
> (1) Provide each public school classroom with an American flag;
>
> (2) Prepare a program for each public school classroom for the beginning of each school day that provides for the salute to the flag and other patriotic exercises that are approved by the United States government; and
>
> (3) Require all students and teachers in charge to stand and face the flag and while standing give an approved salute and recite in unison the pledge of allegiance as follows: "I pledge allegiance to the flag of the United States of America and to the Republic for which it stands, one nation under God, indivisible, with liberty and justice for all."

**Individuals excused from requirements**
(d) Any student or teacher who wishes to be excused from the requirements of subsection (c)(3) of this section shall be excused.

17. Plaintiff raised this issue with Assistant Principal Mr. Stevens on or about February 28, 2025, during lunch, showing him the relevant statute. Mr. Stevens acknowledged the concern but took no immediate action.

18. On March 14, 2025, Plaintiff followed up with Mr. Stevens, noting the continued absence of flags in Mr. Sun's classroom. Mr. Stevens responded that some flags were "too big" for classrooms, despite state law and school policy requiring their presence.

19. On or about March 24, 2025, Plaintiff took a picture of the following sign hanging in his school and posted it on his Instagram page.



20. The sign advertises that BCPS provides resources for students who are in the Country illegally. Students are advised to contact the ACLU "for information on what to do if approached by ICE agents." The ACLU website provides advice for to immigrants "regardless of your immigration status on how to "reduce your risk" when "Police or ICE are at my home."

21. Plaintiff believes it is wrong that his school provides support for illegal immigrants in his school. The presence of these additional students who are in the country illegally materially affects Plaintiff because absorbing these students stretches thinner the already scarce resources and increases class sizes making it more difficult for teachers and students. Occasionally, these additional students present disciplinary problems or threats to the safety of other students.

22. The same sign is posted in multiple locations on every floor of the school. There is a large banner-sized copy at the entrance of the school. There is no other messages that is posted is this pervasive manner throughout the school.

23. Plaintiff raised this issue with an administrator, but no action was taken.

24. There is only one sign that advertises military service, but the military sign has been covered up by a sign for mental health resources so the advertisement for military service cannot be seen. Plaintiff knows that he would be suspended from school if he were to tear down the mental health signs so that students can see the advertisements for the military. On March 24, Plaintiff posted this on Instagram.

25. Plaintiff maintains what are considered to be right-wing viewpoints on certain contemporary issues. Very few students in the school maintain similar viewpoints. Plaintiff is not aware of even a single faculty member that maintain similar viewpoints. In Plaintiff's experience, the overwhelming majority of faculty openly express and advocate their left-wing viewpoints and express disdain for right-wing viewpoints.

26. On March 28, 2025, having received no resolution from his school administration, Plaintiff visited the Baltimore County Board of Education at 6901 North Charles Street, Towson, Maryland 21204, to file a formal complaint against Towson High School's administration for failing to uphold § 7-105, and to discuss the issues with the signs posted in the school with a supervisor.

27. Plaintiff arrived at the Board's Greenwood campus at approximately 11:45 a.m., entering the publicly accessible lobby of Building A, an area open to the public during business hours.

28. Plaintiff used his cell phone to record his interactions with public officials in the lobby.

29. No signs in the lobby prohibited recording.

30. BCPS and the Board were themselves recording Plaintiff a camera posted on the wall while he waited in the lobby.

31. Plaintiff signed a visitor log, providing his name, school, grade, and purpose of visit, and waited peacefully in the lobby for approximately 40 minutes for a supervisor.

32. A supervisor emerged from behind a secure glass door and asked if Plaintiff was recording.

33. Plaintiff confirmed he was, asserting his constitutional right to do so.

34. The supervisor demanded Plaintiff stop recording and leave the building, despite his presence in a public area and lack of disruptive behavior.

35. Plaintiff declined to leave, citing his right to be in a public building to file a complaint.

36. Approximately five minutes later, Police Officer Smith (Badge #673) and four other officers arrived, responding to a call from Board staff.

37. Plaintiff explained to Officer Smith that he was documenting a complaint against his school administration.

38. Officer Smith asked if Plaintiff had journalist credentials.

39. Plaintiff informed the Officer Smith and other officers that the freedom to gather newsworthy information is a First Amendment right that does not require special credentials.

40. The officers either were not aware or pretended that they were not aware of this clearly established First Amendment right.

41. "The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (citing *Blackston v. Alabama,* 30 F.3d 117, 120 (11th Cir.1994) (finding that plaintiffs' interest in filming public meetings is protected by the First Amendment); *Fordyce v. City of Seattle,* 55 F.3d 436, 439 (9th Cir.1995) (recognizing a "First Amendment right to film matters of public interest")). See also *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) ("The filming of government officials engaged in their duties in a public place, including police officers performing their responsibilities … in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs.'") (citing *Mills v. Alabama,* 384 U.S. 214, 218 (1966)). Other circuits to consider restrictions on recording have extended First Amendment protection to recording matters of public interest in public spaces because of its connection with speech of public concern. *See, e.g., Glik v. Cunniffe*, 655 F.3d 78, 83 (1st Cir. 2011); *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017); *Turner v. Lieutenant Driver*, 848 F.3d 678, 688–690 (5th Cir.

2017); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 595 & n.4, 600 (7th Cir. 2012); *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1195–1196 (10th Cir. 2017); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).The Fourth Circuit has done the same, holding the First Amendment protects "livestreaming a police traffic stop." *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 681 (4th Cir. Feb. 7, 2023).

42. The press generally has no right to information superior to that of the general public. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 609 (1978); *Lambert v. Polk County,* 723 F.Supp. 128, 133 (S.D.Iowa 1989) ("[I]t is not just news organizations ... who have First Amendment rights to make and display videotapes of events....").

43. Defendant Richard Muth, School Safety Manager, emerged from the building and informed Plaintiff he was now suspended from school and ordered the police to remove Plaintiff from the property.

44. The officers formally trespassed Plaintiff from the property, threatening arrest if he did not leave. Plaintiff complied and left the premises.

45. On March 28, 2025, Defendant Dr. Kimberly Culbertson, Principal of Towson High School, called Plaintiff's mother, Emily Jensen, stating Plaintiff was at the Board, "unhinged," "disrespectful," and "impersonating a journalist," and would be arrested and suspended.

46. On March 28, 2025, Defendant Eric Knox issued a letter barring Plaintiff from all BCPS central office properties, citing "disruptive" and "threatening" behavior, despite video evidence showing Plaintiff's calm demeanor and contradicting Defendants' allegations.

47. On March 28, 2025, at 12;22 PM, while the incident was still transpiring, Dr. Culbertson called Emily Jensen, Parker's mother, at home.

48. Dr. Culbertson told Emily Jensen that Parker had been suspended.

49. Emily requested that Dr. Culbertson inform her of the reasons for the suspension.

50. Dr. Culbertson responded that she was "not sure" and that she would have to "check the codes" and would inform Emily Jensen at a later time.

51. On March 28, at 4:22 PM, Dr. Culbertson sent a written notice of temporary suspension for Plaintiff until April 8, 2025, citing "disruptive behavior," "refusing to cooperate with school rules," and "unexcused absence," though Plaintiff had pre-approved permission from his counselor, Ms. Weir, to be absent that day.

52. Plaintiff received no hearing or opportunity to contest the suspension before it was imposed, either by Muth or by Culbertson.

53. Plaintiff's video of the incident, posted on YouTube with over 2,700 views, shows he remained peaceful and respectful and posed no threat to anyone.

54. Defendants' actions have prevented Plaintiff from attending school from March 31, 2025, until April 8, disrupting his education as a senior preparing for Marine Corps service.

55. On April 4, 2025, Plaintiff has his final English class for the quarter, and he must pass this class in order to graduate.

## CAUSES OF ACTION

### Count I: First Amendment Retaliation (42 U.S.C. § 1983)

56. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

57. Plaintiff engaged in protected First Amendment activity by recording public officials in a public space and reporting a violation of Maryland law by his school administration.

58. Defendants BCPS, Board, Culbertson, Muth, and Knox retaliated against Plaintiff for exercising his First Amendment rights by suspending him, trespassing him from public property, and issuing false statements about his conduct.

59. This retaliation lacked a legitimate basis and was intended to chill Plaintiff's constitutional rights.

60. As a direct result, Plaintiff has suffered loss of education, reputational harm, and emotional distress.

**Count II: Fourteenth Amendment Procedural Due Process (42 U.S.C. § 1983)**

61. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

62. As a public school student, Plaintiff has a property interest in his education and a liberty interest in his reputation, protected by the Fourteenth Amendment.

63. Defendants BCPS, Board, and Culbertson deprived Plaintiff of these interests by suspending him without notice, a hearing, or an opportunity to present his side of the story.

64. The suspension was based solely on unverified statements from Board staff, without review of Plaintiff's video evidence or his pre-approved absence.

65. As a direct result, Plaintiff has suffered loss of education and emotional distress.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Issue a Temporary Restraining Order (TRO) and Preliminary Injunction enjoining Defendants from enforcing Plaintiff's suspension and barring him from school, effective immediately, to allow his return by April 4, 2025.

B. Declare that Defendants violated Plaintiff's First and Fourteenth Amendment rights.

C. Permanently enjoin Defendants from retaliating against Plaintiff for exercising his constitutional rights and from denying him due process.

D. Award compensatory damages for loss of education, emotional distress, and reputational harm in an amount to be determined at trial.

E. Award reasonable attorney's fees and costs under 42 U.S.C. § 1988.

F. Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 3, 2025

Respectfully submitted,

Jonathan Gross, Esq.
Atty. No. 21800
2833 Smith Ave., Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com

Sarah Spitalnick Esq.
23 Walker Ave., Suite 207
Pikesville, MD 21208
Phone: (484) 332-0454
CPF: 31286
sarahspitalnickesq@gmail.com
*Counsel for Plaintiff Parker Jensen*